(A.R.D. 254)

N. M. Albert Co., Inc., et al. v. United States

Entry No. 465337, etc.

Second Division, Appellate Term

(Decided April 24, 1969)

*Sharretts, Paley, Carter & Blauvelt* (*Howard Clare Carter*, and *Eugene J. Blauvelt*, of counsel) for the appellants.

*William D. Ruckelshaus*, Assistant Attorney General (*Owen J. Rader*, trial attorney), for the appellee.

Before RAO, FORD, and NEWMAN, Judges

FORD, Judge: This case is before us on an application to review the decision of the trial judge in *N. M. Albert Co., Inc., et al.* v. *United States*, 59 Cust. Ct. 788, R.D. 11417, in which the appraised values were sustained for the merchandise covered by eight consolidated appeals for reappraisement. The merchandise involved consists of phonograph records which were manufactured by RCA Victor Mexicana, S.A. de C. V. (hereinafter referred to as RCAVM), a subsidiary of R.C.A. Victor of the United States, and exported from Mexico between August 30, 1961 to March 19, 1964. Both parties are in agreement that constructed value, as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of

1956, 91 Treas. Dec. 295, T.D. 54165, is the proper basis for determining the value for said merchandise. They differ, however, as to the amount of such constructed value, that sought by the appellants being in all cases lower than that set by the appraiser.

The relevant statutory provision reads as follows:

> (d) CONSTRUCTED VALUE.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—
>
>> (1)   the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;
>>
>> (2)   an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and
>>
>> (3)   the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

The evidence submitted by appellants was documentary in nature, centered on the affidavit of an accountant familiar with the financial records of RCAVM who listed the elements of constructed value of each size and series of phonograph record in question from 1961 to 1966 inclusive, under the following headings: Material, Labor, Recording Costs, Artist and Composer Royalty Cost (comprising Total Materials and Fabrication), Manufacturing Overhead, Administrative Overhead (comprising Total Usual General Expenses), All Coverings and Containers and Profit. In addition the affidavit gave the number of records exported by RCAVM for the years 1961 through 1965 and for 1966 until the end of March. When these figures are applied to the figures contained in plaintiffs' exhibits 3, 4, 5 and 6 (which are publications of the U.S. Department of Commerce, Bureau of the Census, giving the total record imports from Mexico during the years in question) it is seen that RCAVM was responsible for an average of approximately 70 percent of the record exportations from Mexico.

Appellants' attempt to satisfy the burden of establishing the usual general expenses and profits of other producers in the country of origin, took the form of letters written by counsel to firms referred

to as "companies of importance," copies of which were introduced in evidence as plaintiffs' collective exhibit 7. These letters requesting information as to general expenses and profits were sent to Orfeon Videovox, S.A., Pan American De Discos, S.A., and Discos C.B.S., S.A. Another letter addressed to Discos Columbia de Mexico, S.A., was sent to a representative of RCAVM for forwarding. It appears, however, that Discos Columbia was merely the former name of Discos C.B.S. In sum, registered letters were sent to three firms, one of which, C.B.S. replied that it made only sporadic exports to the United States which it did not feel would be relevant to plaintiffs' case. Orfeon did not reply but the receipt for its letter is signed. Pan American did not reply nor was the receipt for its letter signed.

Defendant's exhibit A consists of a report by a senior customs representative in Mexico, D.F., containing data regarding the export sales of RCAVM such as conditions of sale, prices, terms, together with verification by audit. The only item of interest in the context of this case is the statement by the representative that prior investigations by his office have indicated that other manufacturers of similar merchandise also made export sales during the period in question.

On the basis of this record the trial judge upheld the value found by the appraiser and stated in part:

> There is no evidence, and defendant does not concede, that the foregoing named companies were the only ones in Mexico exporting phonograph records to the United States during the involved period. Nor does the record show whether those companies exported phonograph records to the extent of the difference shown, supra, for imports and those allegedly exported by RCAVM, or whether other Mexican exporters shipped. Defendant's exhibit A, page 3, states that previous investigations conducted by Treasury Department, Mexico, D.F., "indicated that other manufacturers of similar merchandise sell for export through or to exclusive agents as in this case." While exhibit A does not list the names of other manufacturers, it is clear therefrom and from collective exhibit 7 that the plaintiffs herein have not been able to show, by satisfactory evidence, that a diligent effort was made to ascertain the names and addresses of *all* exporting producers of records in Mexico during the time involved by the instant appeals, or to write to *all* such producers. The so-called "list [of] the companies of importance" does not meet the requirements which would permit accepting the figures as to general expenses and profit of the exporter herein.

Appellants rely on three arguments herein; first, that no presumption of correctness attached to the appraisement due to the failure of the appraiser to separately state the elements of constructed value; second, that the general expenses and profits "usually reflected" are best exemplified by those of the largest exporter and third, that due diligence was exercised in the attempt to ascertain the general expenses and profits of other producers.

The contention that it is incumbent upon the appraiser to itemize the elements of constructed value is entirely without merit, and has no support in statute or case law. *Frank P. Dow Co., Inc., et al* v. *United States*, 59 Cust. Ct. 697, R.D. 11370. The law contemplates a single value to be found by the appraiser. See section 500, Tariff Act of 1930. As stated in 28 U.S.C.A., section 2633 "The value found by the appraiser shall be presumed to be the value of the merchandise. The burden shall rest upon the party who challenges its correctness to prove otherwise." It is for the appellants to come forward with detailed proofs regarding the elements of constructed value. Initially the appellee may rely entirely on the presumption of correctness attaching to the value found by the appraiser. Of course, if appellants succeed in establishing a *prima facie* case, then and only then would appellee have to address itself to the elements of constructed value. Appellants cite no authorities which would support an alteration of the above conclusion. See *I. Arditi* v. *United States*, 50 CCPA 49, C.A.D. 818.

The contention by appellant that the figures for general expenses and profit of the dominant producer should be controlling in ascertaining the amount "usually reflected" is similarly without merit. We are of the opinion that the language of section 402(d)(2) clearly envisions that an evaluation of the general expenses and profit proposed by a party is to be made by reference to the general expenses and profits of other producers of merchandise of the same class or kind as that involved herein. This is so regardless of the dominance of the producer in question so long as his dominance is less than total. The courts have consistently adhered to this view and logically so since the amounts in question should hardly serve as their own substantiation when there are figures outside the control of the producer in question which may be used for reference. Only in the case where there are no other producers or where diligent inquiry has failed to elicit the necessary information from other producers, may resort be made to the general expenses and profits of the manufacturer in question. *United States* v. *Henry Maier*, 21 CCPA 41, T.D. 46378; *United States* v. *Jovita Perez*, 36 CCPA 114, C.A.D. 407; *John V. Carr & Son, Inc.* v. *United States*, 52 CCPA 62, C.A.D. 860; *United States* v. *Berben Corporation*, 49 Cust. Ct. 497, A.R.D. 147; *Ercona Camera Corp. et al.* v. *United States*, 56 Cust. Ct. 811, A.R.D. 207; *Meadows, Wye & Co., Inc.* v. *United States*, 58 Cust. Ct. 746, R.D. 11316. Even then, the appraiser may properly choose to disregard the general expenses and profits of the sole producer if the transactions involved are between related persons as set forth in section 402(g), and as is the case herein.

Since at least 30 percent of the records exported from Mexico during the period in question were exported by firms other than RCAVM, it was incumbent upon appellants to show what amount for general expenses and profits was usually reflected in sales by other producers and whether it equalled that of RCAVM. Failing this the only alternative which would permit a resort to RCAVM's actual figures would be a situation where diligent inquiry into the practices of other producers had failed to reveal the necessary information.

We are in agreement with the trial judge that the appellants have not exercised due diligence in their attempt to ascertain the usual general expenses and profits of other producers. Our basic objection is to the insufficiency of proof regarding the scope of appellants' inquiry, namely, the extent to which those firms queried substantially represent the remaining 30 percent of exportations. We need not rely herein on a failure to show due diligence with regard to *all* other producers since there has been an even more fundamental failure to show in any manner just how much of the remaining exportations were attributable to the producers queried. The record, barren of all information except for the sending of three letters and the receipt of one reply, is not helpful. Indeed that one reply admitted to only "sporadic" exports, thus leaving the identity of those who must have exported the remaining 30 percent even more shrouded in mystery.

In light of our views regarding the insufficient scope of appellants' inquiry we need not go into a discussion of their diligence in obtaining a response from those firms they did contact. We note only that the sending of an initial letter of inquiry with nothing more is a minimal procedure which cannot, under certain circumstances such as doubtful receipt of the letter, be regarded as exemplifying the assiduity required by the courts.

On the basis of the foregoing, we find that appellants failed to exercise due diligence in their pursuit of information regarding the general expenses and profit of other producers of merchandise of the same class or kind in the country of exportation. Accordingly, they did not justify the use of the exporter's figures for general expenses and profit and thus did not prove those elements of statutory constructed value.

The findings of fact and the conclusions of law of the trial judge are incorporated herein by reference.

The judgment below is hereby affirmed.

Judgment will be entered accordingly.